OPINION
{¶ 1} On May 29, 1987, appellant, Debra Newcomb, began working for appellee, Hostetler Catering, Inc. As an employee, appellant received ten dollars a month for every year of service with the company. In September of 2003, appellee reduced the monthly amount to five dollars, reducing appellant's 2003 amount by fifty percent.
 {¶ 2} Appellant objected to the reduction, and stated she would be consulting an attorney. One week later, appellee terminated appellant's employment for threatening another employee.
 {¶ 3} On August 20, 2004, appellant filed a complaint against appellee and owner Edward Hostetler, claiming breach of implied contract, promissory estoppel, and a public policy wrongful discharge claim. On December 14, 2004, appellant filed an amended complaint to include claims against Mr. Hostetler.
 {¶ 4} On October 14, 2005, appellee filed a motion for summary judgment.[1] By judgment entry filed December 22, 2005, the trial court granted appellee's motion on appellant's public policy wrongful discharge claim. Appellant voluntarily dismissed her claims for breach of implied contract and promissory estoppel on April 10, 2006. The trial court dismissed the case on same date.
 {¶ 5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT PREMISED UPON A LACK OF PUBLIC POLICY EMPLOYMENT PROTECTION WHEN AN EMPLOYEE IS FIRED FOR STATING SHE WILL BE SEEKING THE ASSISTANCE OF AN ATTORNEY."
 II {¶ 7} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT PREMISED UPON A LACK OF PUBLIC POLICY EMPLOYMENT PROTECTION WHEN AN EMPLOYEE IS FIRED IN RELATION TO ASSERTING IMPLIED CONTRACT OR BENEFIT RELATED RIGHTS."
 I {¶ 8} Appellant claims the trial court erred in granting summary judgment to appellee on her public policy wrongful discharge claim. We agree.
 {¶ 9} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448,1996-Ohio-211:
 {¶ 10} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 0.03d 466, 472, 364 N.E.2d 267, 274."
 {¶ 11} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
 {¶ 12} In this assignment, appellant argues the case of Chapman v.Adia Services, Inc. (1997), 116 Ohio App.3d 534, is persuasive and the trial court erred in making the finite distinction between threatening to seek legal advice and actually consulting an attorney.
 {¶ 13} Although the trial court was persuaded that Chapman held discharging an employee for consulting an attorney was a clear public policy violation, the trial court found because appellant merely threatened to seek advice from counsel, the public policy did not apply to appellant:
 {¶ 14} "There is no sworn evidence that plaintiff consulted a lawyer before she was fired. The evidence before the court is only that she threatened to do so. The Chapman case does not say that an employee's threat to talk to a lawyer immunizes that employee from discharge by an at-will employer." See, Judgment Entry filed December 22, 2005.
 {¶ 15} As in the case sub judice, Chapman was working without a contract for employment therefore, she was an at-will employee. Under the employment-at-will doctrine, employers may terminate an at-will employee at any time, for any reason, or for no reason at all, as long as the termination is not contrary to law. Mers v. Dispatch PrintingCompany (1985), 19 Ohio St.3d 100. However, in Greeley v. Miami ValleyMaintenance Contractors, Inc. (1990), 49 Ohio St.3d 228, the Ohio Supreme Court carved out a public policy exception to this rule. TheGreeley court at paragraph two of the syllabus stated, "the right of employers to terminate employment at will for `any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy." TheChapman court at 541 explained the following:
 {¶ 16} "The Ohio Supreme Court has further opened the door for public-policy exceptions: ` "Clear public policy" sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law.' Painter v.Graley (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus. This broadening of the public-policy exception has left the determination of the extent of the exception to the courts of this state."
 {¶ 17} Our brethren from the First District in Chapman at 541-542 discussed the genesis of the public policy doctrine as it pertains to seeking legal advice as follows:
 {¶ 18} "According to Professor Perritt, the elements of wrongful termination are as follows:
 {¶ 19} 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 {¶ 20} 2. That dismissing employees under circumstances like those involved in the plaintiffs dismissal would jeopardize the public policy (the jeopardy element).
 {¶ 21} 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 {¶ 22} 4. The employer lacked [the] overriding legitimate business justification for the dismissal (the overriding justification element)." (Emphasis sic.)' Id. at 69-70, 652 N.E.2d at 657-658, quoting Perritt, The Future of the Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399.
 {¶ 23} "The clarity and the jeopardy elements are questions of law and policy to be determined by the court. Kulch v. Structural Fibers,Inc. (1997), 78 Ohio St.3d 134, 151, 677 N.E.2d 308, 321, citingCollins v. Rizkana, 73 Ohio St.3d at 70, 652 N.E.2d at 658. The causation and overriding-justification elements are questions of fact to be determined by the trier of fact. Id.* * *
 {¶ 24} "Turning to the clarity element, we are able to identify at least three sources of public policy that encourage employees to consult an attorney about possible claims that would affect the employer's business interests-the Ohio Constitution, the Code of Professional Responsibility ('CPR') as adopted by the Ohio Supreme Court, and common law. First, Section 16, Article I of the Ohio Constitution provides: `All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law * * *.' The framers of the Ohio Constitution inserted that provision, and we believe that they meant what they wrote. A remedy would be illusory if citizens could lose their jobs for seeking it.
 {¶ 25} "In addition, the Ohio Constitution gave the Ohio Supreme Court the authority to adopt the CPR in 1970. The CPR contains two provisions which help to convince us that encouraging individuals to consult an attorney is a clear public policy in Ohio. EC 1-1 states that `every person in our society should have ready access to the independent professional services of a lawyer of integrity and competence.' EC 2-1 states:
 {¶ 26} " `The need of members of the public for legal services is met only if they recognize their legal problems, appreciate the importance of seeking legal assistance, and are able to obtain the services of acceptable legal counsel. Hence, important functions of the legal profession are to educate laymen to recognize their legal problems, to facilitate the process of intelligent selection of lawyers, and to assist in making legal services fully available.'
 {¶ 27} "We refuse to engraft upon the CPR the caveat `however, if a claim is against the potential client's employer, the attorney must advise the client that she might lose her livelihood simply for consulting the attorney.'
 {¶ 28} "The third identifiable source of public policy that encourages employees to consult an attorney about possible claims that would affect their employer's business interests is the common law. The United States Supreme Court has concluded that, in order for a private citizen to obtain redress, the claimant must be able to obtain adequate legal representation. Riverside v. Rivera (1986), 477 U.S. 561,106 S.Ct. 2686, 91 L.Ed.2d 466. Although the court's focus was on an individual obtaining counsel to file claims under the Civil Rights Act, the rationale is applicable to all claims. Consulting with an attorney is the first step toward gaining access to the courts."
 {¶ 29} As conceded by the parties, it is undisputed that appellant, when faced with a reduction of fifty percent in her yearly bonus amount, replied she would be contacting an attorney for advice. Approximately one week later, appellant was terminated "for threatening another employee." See, Plaintiff's Exhibit 3, attached to Hostetler Deposition.
 {¶ 30} Appellant never sought advice from an attorney during the one week lapse from the making of her statement to her termination. Appellee's claim of valid termination is a factual issue to be litigated sub judice.
 {¶ 31} We find threatening to seek advice from an attorney and actually consulting an attorney is a distinction without a difference when viewed in light of the three public policy considerations cited inChapman.
 {¶ 32} Upon review, we find the trial court erred in granting summary judgment to appellee on appellant's public policy wrongful discharge claim.
 {¶ 33} Assignment of Error I is granted.
 II {¶ 34} Appellant claims the trial court erred in rejecting an alternative basis for her public policy claim, namely, implied contract or promissory estoppel. We disagree.
 {¶ 35} The trial court declined to grant summary judgment on the implied contract or promissory estoppel claims as genuine issues of material fact existed.
 {¶ 36} First, we note any ERISA claims are proper in Federal District Court and are not maintainable in a state court action. Secondly, until appellant was discharged, no action on implied contract had been initiated.
 {¶ 37} Upon review, we find the trial court was correct in rejecting these alternative public policy violation arguments.
 {¶ 38} Assignment of Error II is denied.
 {¶ 39} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby reversed and remanded.
By Farmer, J.
Gwin, P.J. and
Wise, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is reversed and the matter is remanded to said court for further proceedings consistent with this opinion.
[1] Mr. Hostetler had passed away in 2004.